## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MICHAEL P. KENNEY d/b/a MIKE O'DEA
AND SHAMROCK FILMS,

    Plaintiff,

v.

                                      DOCKET NO.

WARNER BROTHERS ENTERTAINMENT,
INC., LANGLEY PARK PICTURES,

    Defendant.

## COMPLAINT AND JURY DEMAND

**NOW COMES** the Plaintiff, by and through his undersigned counsel, and sets forth the following allegations against the named Defendants as his Complaint in this matter:

### I.    Parties

1. Plaintiff Michael P. Kenney d/b/a Mike O'Dea and Shamrock Films ("Mr. O'Dea") is an individual with a place of residence in Stoneham, Massachusetts.

2. Defendant Warner Brothers Entertainment, Inc. ("Warner Brothers") is a corporation with a principal place of business at 4000 Warner Boulevard, Burbank, California.

3. Defendant Langley Park Pictures ("Langley") is an entity with a principal place of business at 4000 Warner Boulevard, Building 144, Burbank, California.

### II.    Jurisdiction and Venue

4. This Court has jurisdiction over the claims in this matter pursuant to 28 U.S.C. § 1331 and 1338 (a), as it is an action arising under Acts of Congress relating to copyrights and

trademarks, including the Copyright Act of 1976, 17 U.S.C. § 101 et seq. and 501 et seq. as well as the Lanham Act, 15 U.S.C. § 1051 et seq.  This Court has pendent jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1338(b).

5. This Court has personal jurisdiction over the parties because the claims set forth herein arise out of the actions of Defendants that were undertaken in this judicial district and/or are aimed at consumers in this judicial district and/or by their actions the Defendants have availed themselves to the jurisdiction of the Courts in this judicial district.

6. Venue in this judicial district is appropriate under 28 U.S.C. § 1391 because Plaintiff is a resident of this judicial district and a substantial part of the events giving rise to the causes of action set forth below occurred in this judicial district.

### III.   Facts Common to All Counts

7. Mr. O'Dea is a well-known screenwriter, director and actor in the independent film-making industry.

8. Among other things, Mr. O'Dea has been developing a comic book, screenplay and franchise movie titled "Ghostman" since 2010.

9. Essentially, *Ghostman* is a heist thriller about a masked thief who seeks to avoid the F.B.I.  This "ghostman," as he is known in the screenplay, is pulled back into "one final score" by his colleagues in crime.

10. To protect his original work, and to place other film-makers on notice of the work, Mr. O'Dea registered *Ghostman* with the Writers Guild of America ("WGA") on June 27, 2011. *See* Exhibit 1.

11. To promote the work, Mr. O'Dea, among other things, obtained the web domain "TheGhostmanMovie.com" and promoted the movie through various press interviews and media outlets. *See* Exhibits 2 and 3, respectively.

12. As a result, at all relevant times, Defendants knew or should have known of Mr. O'Dea's original work and his development of a film under that title.

13. The work and title "Ghostman" have been continuously used by Mr. O'Dea in interstate commerce to promote his upcoming film since 2010.

14. Mr. O'Dea is currently in post-production of *Ghostman* and will begin film festival submissions in May 2013.

15. Mr. O'Dea recently discovered that Warner Brothers Entertainment, Inc. ("Warner") and/or Langley Park Pictures ("Langley") purchased the rights to a book and screenplay in order to make another heist thriller film titled "The Ghostman" in which the protagonist, like the protagonist in Mr. O'Dea's work, is a thief so nicknamed because he avoids the F.B.I like a "ghost."

16. The production of Defendants' film "The Ghostman" will infringe upon Mr. O'Dea's original work to which he has copyrights.  Among other things, Mr. Hobbs's work utilizes the identical theme (heist thriller involving a "ghostman") and title ("Ghostman") as Mr. O'Dea's original, protected work.

17. The use of the identical theme, central character and title in a competing film by industry giants such as Warner and Langley will have a devastating effect on Mr. O'Dea's reputation as well as the distribution and franchise potential of his film, related products and copyrights.

18. As such, it will be untenable for both films to use the same characters and the term "Ghostman" in their titles and the Defendants' copyright infringement shall cause Mr. O'Dea irreparable harm.

19. On March 8, 2013, Mr. O'Dea, through undersigned counsel, served a cease and desist demand upon the Defendants. The purpose of the demand was to, again, put Defendants on notice of Mr. O'Dea's claims, to protect his copyrights, and gain voluntary compliance from Defendants with relevant law.

20. Defendants failed and/or refused to respond to that letter and, rather, continues to infringe on Mr. O'Dea's original works, character, titles, and copyrights.

21. Defendant Warner Brothers failed to respond despite previously filing a similar suit against a competitor for use of the term "Hobbit" in the title to a film shortly before the release of one of its J.R.R. Tolkien movies. Upon information and belief, in that suit, Warner Brothers claimed that the use of the term "Hobbit" in the competing movie title constituted infringement, false designation of origin, trademark dilution, false advertising, and unfair competition. There, the Court found in favor of Warner Brothers and Warner Brothers issued a statement stating:

> **This victory underscores the importance of protecting the unique work of our industry's creative community from companies…whose cynical business model is designed to profit from the work of others. Their intent to create confusion in the marketplace on the eve of the release of "The Hobbit"…has met with defeat.**

## IV.   Causes of Action

### COUNT I
### (Copyright Infringement in Violation of 17 U.S.C. § 106 and 501 et. seq.)

22. Mr. O'Dea repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

4

23. At all times relevant hereto, Mr. O'Dea has been and still is the owner and proprietor of all right, title and interest in and to the title "Ghostman" and its themes and characters – in particular in regards to any heist thriller film involving a "ghostman" character being promoted under the title "Ghostman."

24. Mr. O'Dea's screenplay, film, characters, and title "Ghostman" contain his wholly original material. Mr. O'Dea's screenplay, film, characters, and title "Ghostman" are original works of authorship that are fixed in a tangible form of expression, including in a screenplay registered with the WGA. Mr. O'Dea's screenplay, film and title are copyrightable subject matter under the copyright laws of the United States.

25. Upon information and belief, with full knowledge of Mr. O'Dea's rights in his screenplay, film and title, Defendants have infringed and continue to infringe upon Mr. O'Dea's original works by directly copying both the title, main character, and ideas contained in Mr. O'Dea's original works and then promoting their infringing title, character and film throughout the United States, including in Massachusetts.

26. Defendants' use of Mr. O'Dea's themes, the central ghostman character, and the title "Ghostman" in its upcoming movie that is in the same genre as Mr. O'Dea's original work is a violation of Mr. O'Dea's copyrights and creates a likelihood-of-confusion about the origin of the movie and related products offered by Defendants.

27. Mr. O'Dea owns a protectable copyright interest in, inter alia, the theme of his screenplay, the central ghostman character in his screenplay, and the title "Ghostman" and derivatives thereof – in particular in relation to the heist thriller genre that is now being marketed by both parties.

28. Defendants are using or have used confusingly similar characters, themes, and title for promotion of its film in such a way that it creates a likelihood of confusion, mistake and/or deception with the consuming public.

29. The film and related products offered by Defendants in interstate commerce are the same as those offered by Mr. O'Dea and/or the actions of Defendants make it appear that their products are associated with, affiliated with, connected to, approved by, authorized by or sponsored by Mr. O'Dea.

30. Among other things, the actions of Defendants create false descriptions of the origin of Defendants' "Ghostman" film, themes, and characters as well as any related products that are marketed for interstate sale by Defendants in relation to their film.

31. Defendants' acts as aforesaid, and to be proven at trial, violate Mr. O'Dea's exclusive rights, *inter alia*, under § 106 of the Copyright Act of 1976, 17 U.S.C. § 106.

32. Defendants are unfairly competing against Mr. O'Dea by the production and promotion of its "Ghostman" film. Upon information and belief, Defendants' copying, distribution and future commercial sale of its Ghostman film and related products is, and shall be, a willful and deliberate infringement of Mr. O'Dea's copyrights and is causing Mr. O'Dea irreparable harm.

33. Mr. O'Dea requests all relief afforded under common law, the Copyright Act and the Lanham Act for the actions and omissions set forth herein; including but not limited to injunctive and monetary relief.

## COUNT II
### (False Designation of Origin Under § 43 (a) of the Lanham Act)

34. Mr. O'Dea restates and realleges each of the foregoing paragraphs as if fully set forth herein.

35. Defendants' use of Mr. O'Dea's character, themes, title and movie genre constitutes false designation of origin which has deceived and/or is likely to deceive consumers and prospective consumers into believing that Defendants' film and related products are those of Mr. O'Dea or are sponsored or approved by Mr. O'Dea.

36. As a consequence of the foregoing, Defendants' acts are likely to divert consumers away from Mr. O'Dea's film and related products.

37. Defendants' use of Mr. O'Dea's character, themes, title and movie genre to promote its competing film will also discourage consumers and potential consumers from viewing Mr. O'Dea's film and purchasing his related products.

38. Mr. O'Dea has no control over the quality of Defendants' film or related products.  Any deficiency in quality in Defendants' film and related products will reflect adversely on Mr. O'Dea, his reputation, his film and his related products because the consumer public will be confused over the origin of Defendants' film and related products.

39. Mr. O'Dea's harm, including irreparable harm, by virtue of Defendants' false designation of origin will continue unless and until this Court enjoins the Defendants' wrongful conduct.

## COUNT III
### (Unfair Competition and Deceptive Trade Practices in Violation of G.L. c. 93A)

40. Mr. O'Dea restates and realleges each of the foregoing paragraphs as if fully set forth herein.

41. By the promotion of its infringing film and related products, Defendants have engaged in, and intend to further engage in, trade or commerce within the Commonwealth of Massachusetts as that term is defined by Chapter 93A.

42. Due to the conduct alleged herein, Defendants are engaged in unfair competition and unfair and deceptive trade practices under Chapter 93A. Among other things, Defendants wrongfully used Mr. O'Dea's copyrighted work for commercial gain without permission and after demand to cease and desist.

43. By their actions, Defendants are willfully or purposefully creating consumer confusion and/or are "palming off" of the goodwill and reputation of Mr. O'Dea and his original, creative title and screenplay.

44. Mr. O'Dea's products and works have acquired secondary meaning such that confusion as to the source of Defendants' film is likely to arise if Defendants are allowed to copy Mr. O'Dea's original ideas, title and works.

45. Upon information and belief, a substantial part of the conduct set forth herein occurred primarily or substantially within the Commonwealth of Massachusetts and violates G.L. c. 93A, §§ 2, 11.

46. Defendants' actions described herein were performed willfully and/or knowingly.

47. As a result of the unfair and deceptive conduct set forth herein, Mr. O'Dea sustained injuries, including but not limited to, irreparable injury to copyright and reputation, actual damages and lost profits, out of pocket expenses to mitigate the issues described herein, and litigation costs and expenses, including attorney's fees associated with the pursuit of this matter and the filing of this action.

48. Mr. O'Dea is entitled to be compensated for all harm sustained by him and to all damages allowed by law, including treble damages, costs, interest and attorney's fees.

## COUNT IV
### (Request for Preliminary and Permanent Injunction)

49. Mr. O'Dea restates and realleges each of the foregoing paragraphs as if fully set forth herein.

50. On the facts alleged herein, and pursuant to relevant law including the federal statutes cited above, Mr. O'Dea is entitled to injunctive relief to remedy the harm being caused by Defendants.

51. Mr. O'Dea has shown a likelihood of success on the merits of his claims.

52. Mr. O'Dea has shown that there is a substantial risk of irreparable harm in the absence of injunctive relief and that he has no adequate remedy should the infringement on his copyrights continue unabated.

53. Mr. O'Dea has shown that there is no legitimate harm to Defendants should an injunction issue.

54. Mr. O'Dea has shown that public policy and legislative mandate favor the issuance of an injunction to prevent the trademark infringement and consumer confusion asserted herein.

55. Mr. O'Dea is entitled to first a preliminary, and then a permanent, Order from this Honorable Court, as follows:

    (1)    Enjoining Defendants, and anyone acting in concert with Defendants or on their behalf, from using the characters, themes of Plaintiff's Ghostman movie and further enjoining Defendants' use of the term "Ghostman" in the title of its presently marketed film or in any product being developed or offered for sale by them in relation to that film;

    (2)    Requiring Defendants forthwith to remove all indicia of the "Ghostman" term or its derivatives from any of its films, products, services, websites or other commercial marketing material; and

    (3)    Requiring Defendants to forthwith provide a full accounting of all sales of any products it has made, offered for sale, or sold that bear any

indicia of the name or term "Ghostman" and any derivative, logo,
name, trademark or tradename associated with that term.

### JURY DEMAND

Mr. O'Dea demands a trial by jury on all counts of the Complaint that are so triable.

**WHEREFORE**, Mr. O'Dea prays that this Honorable Court:

      (a)      Enter judgment in his favor on all counts of this Complaint;

      (b)      Award damages and all other remedies available on each count of this

             Complaint to the full extent allowed by law and in equity;

      (c)      Award costs, interest, attorneys fees, multiple and punitive damages where

             appropriate and as allowed by law;

      (d)      Enter any and all injunctive relief as allowed by law, including an Order

             consistent with Count IV, above; and

      (e)      Enter such other legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

**MICHAEL P. KENNEY**
**d/b/a MIKE O'DEA AND SHAMROCK FILMS,**

By his attorneys,

*/s/ Timothy J. Perry*
Timothy J. Perry (BBO#631397)
tperry@pkjlaw.com
PERRY, KRUMSIEK, & DOLAN, LLP
210 Union Wharf
Boston, MA  02109
(617) 720-4300

Dated:     April 30, 2013

10

# EXHIBIT 1

**Writers Guild of America, west, Inc.**
7000 West Third Street
Los Angeles, California 90048-4329
Telephone: 323-782-4500
Fax: 323-782-4803



## Client Statement

Client: KENNEY, MICHAEL P                                          Date: 02/14/13

| ITEM | EFF DATE | EXP DATE | MATERIAL TYPE | PAID |
|------|----------|----------|---------------|------|
| Register an Item | 06/27/11 | 06/27/16 | SCREENPLAY | YES |
| Registration # 1516712 Title: Ghostman | | | | |
| Register an Item | 12/10/04 | 12/10/09 | SCREENPLAY | YES |
| Registration # 1034041 Title: Townies | | | | |

TOTAL ITEMS: 2            ITEM TOTAL:    **$40.00**

| DESCRIPTION | DATE | AMOUNT |
|-------------|------|--------|
| NONE | 02/14/13 | $0.00 |
| CC - 4085373000745308, Exp. Date: 06/14 | 06/27/11 | $20.00 |
| CC - 4828533067455057, Exp. Date: 01/08 | 12/10/04 | $20.00 |
| | PAYMENT TOTAL: | **$40.00** |

# EXHIBIT 2



# EXHIBIT 3

NOVEMBER 22, 2011

*Stoneham native Mike O'Dea*

# Filmaker seeks fame with "Ghostman"

By NANCY DONAHUE
Staff Writer

His life sounds like the stuff of movies. And maybe that's what it takes to make the chilling, edgy films he has, as well as the tough decisions it's taken to get him where he is today. But Stoneham native Mike O'Dea refuses to compromise on his vision of making it big in the independent film industry and shunning the Hollywood machine in the process.

O'Dea, who still lives and works in Stoneham, is currently filming *"Ghostman"*, based on a crime-romance novel he wrote originally titled *"Boston Rose"*, about a thief who decides to give up his life of crime for the woman he loves. That is, until his former partners drag him back in to their illicit world of burglary. O'Dea also stars in the movie.

O'Dea spent about eight months working on a solid script for the film, but says it continues to change every day.

"Storytelling for me is a very organic process. A script is merely a blueprint. It's on set and location that the story takes on a life of its own and it's never done until the movie is done in the editing room."

Part of *"Ghostman"'s* filming has been done at Paul Guyetta's Hair Fetish Salon on Montvale Avenue right here in Stoneham. O'Dea's character's wife in the film works at the salon. Guyetta lets the film crew use his shop on Sundays and Mondays when the salon is typically closed.

"It's a neat, little, vintage salon," O'Dea said.

Two reasons O'Dea chose Hair Fettish to film scenes are that the salon is on the verge of closing due to the tough economy, and Guyette is a veteran of the U.S mili-



**MIKE O'DEA**

tary.

"I'm hoping that my little movie lights out front of his salon will help bring in some more business for him. It's very rewarding for me to be able to give back to someone who served this country for our freedom."

Filming for *"Ghostman"* is expected to wrap up by December 31, with the next few months spent on editing before screening the film at an arthouse theatre in Boston.

There may be a little bit of rebel in the independent film maker who prefers the keep the artistic integrity of his work intact rather than selling out to a big name movie production company who sometimes looks to change the film's soul in order to reap big box office dollars. That rebel has always been part of Mike O'Dea.

Born Michael Patrick Kennedy, he changed his name in 2005 when he joined the Screen Actor's Guild and found that his birth name was already being used. Growing up in Stoneham, just up the street from the old North School, O'Dea enjoyed playing hockey and having wrestling matches on his front lawn, but his great-

**SHAMROCK, A5**

est interest was art. That, however, wasn't enough to carry him through school.

"I was held back in the fourth grade and I became very bitter inside seeing my friends continue without me. I think that's when my behavior started to deteriorate."

"My parents were great and supportive...I was just a very unmanageable kid."

Eventually, he was expelled from Stoneham High in the ninth grade for fighting. The incident involved a bully who was picking on one of O'Dea's classmates. "I felt bad for him because he was always living in fear." O'Dea offered to take care of the problem for $100 but the bully reported him to school officials who called the police. O'Dea took off, but still managed to fight the bully later that day.

"I was arrested soon after and sentenced to the Department of Youth Services for assault with intent to extort. It wouldn't be my first time in a lockup facility."

O'Dea was in and out trouble thereafter, but in 1996, shortly before the death of his best friend Paul McCarthy, a gifted baseball

**O'DEA, A2**



**THE STONEHAM HIGH SCHOOL BAND** performed several patriotic songs under the direction of Mr. Grammer at the Town Hall Veterans Day ceremony last Friday.  <span>PHOTO BY BILL RYERSON</span>