UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-11068-RGS

MICHAEL P. KENNEY d/b/a MIKE O'DEA AND SHAMROCK FILMS

v.

WARNER BROS. ENTERTAINMENT INC., LANGLEY PARK PICTURES

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION
TO DISMISS THE AMENDED COMPLAINT

November 29, 2013

STEARNS, D.J.

Plaintiff Michael P. Kenney brought this copyright infringement action

against Warner Brothers Entertainment Inc. and Langley Park Pictures

(collectively, Warner Brothers), alleging that Warner Brothers' recent

acquisition of the rights to develop a motion picture based on Roger Hobbs's

precocious debut novel "Ghostman" infringes his copyright in a "comic book,

screenplay and franchise movie" of the same name.[1]  Warner Brothers now

moves to dismiss Kenney's Amended Complaint.

BACKGROUND

The facts, in the light most favorable to Kenney as the non-moving party,

---

[1] Kenney's initial Complaint also contained claims for trademark
infringement and violations of Mass. Gen. Laws ch. 93A.  The court dismissed
these claims with prejudice and granted Kenney leave to refile his Copyright
Act claim upon registering a copyright with the United States Copyright Office.

are as follows.  Kenney is a self-styled screenwriter, director, and actor.  In 2010, Kenney began developing a comic book, screenplay, and franchise movie titled "Ghostman."  In essence, *Ghostman* is a "heist thriller about a masked thief who seeks to avoid the F.B.I. by using ghost-like abilities."  After having retired from a life of crime, the Ghostman is "pulled back into one final score" by his former compatriots.

Kenney registered his *Ghostman* screenplay with the Writers Guild of America in 2011.  To publicize the anticipated motion picture, Kenney purchased the web domain "TheGhostmanMovie.com" and "promoted the movie through various press interviews, media outlets, and throughout the movie industry."  *Ghostman* is now in postproduction editing and Kenney is currently submitting the movie as a candidate for screening at independent film festivals.

Shortly before filing this lawsuit, Kenney learned that Warner Brothers had acquired the rights to develop a movie based on Hobbs's novel.  Kenney alleges that Ghostman (the movie) will also be a "heist thriller," in which the protagonist "is a thief so nicknamed because he avoids the F.B.I. like a 'ghost.'"[2] After his cease and desist letter to Warner Brothers went unanswered,

---

[2] Michiko Kakutani, reviewing Hobbs's novel for the New York Times, described its protagonist as a "career criminal," expert in the art of

Kenney successfully applied for a Certificate of Registration from the Copyright Office and filed this lawsuit seeking monetary damages and injunctive relief.

## STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436,442 (1st Cir. 2010).

## DISCUSSION

---

disappearing, "who's helped maybe a hundred bank robbers escape over the years" and who is called upon by a drug lord to whom he owes a debt "to clean up a casino heist that's gone south." Michiko Kakutani, *A Crook with a Big Debt to Pay*, N.Y. Times, Feb. 10, 2013.

To state a claim for copyright infringement, Kenney must plausibly allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). A certificate of copyright, which Kenney has obtained, is prima facie evidence of ownership of a valid copyright. Thus, the first element of the infringement test is not in dispute. *See Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005). To satisfy the second element of the test, Kenney must make two showings. First, that Warner Brothers, as a factual matter, has copied elements of his copyrighted work. *Id.* at 18. Second, he must establish that the copying is actionable by "proving that the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works 'substantially similar.'" *Id.* (internal quotations and citation omitted).

Because Kenney has no direct knowledge of any copying by Warner Brothers, he must satisfy his first-prong burden indirectly by showing that Warner Brothers "enjoyed access to the copyrighted work and that a sufficient degree of similarity exists between the copyrighted work and the allegedly infringing work to give rise to an inference of actual copying." *Id.* This "probative similarity" inquiry is distinct from the substantial similarity requirement that emerges in the second prong, which demands "proof that the copying was so extensive that it rendered the works so similar that the later

work represented a wrongful appropriation of expression." *Id*.

**Access**

Kenney theorizes three separate avenues by which Warner Brothers could have gained access to his work: (1) through registration of his screenplay with the Writer's Guild of America; (2) from his "TheGhostmanMovie.com" website; and (3) his promotion of the work through "press interviews" and "media outlets." To succeed on the access prong, Kenney must demonstrate that Warner Brothers had a "reasonable opportunity" to access his *Ghostman* screenplay – "[e]vidence that only creates a 'bare possibility'" that Warner Brothers had access to the work is not enough. *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 3 (1st Cir. 1996).

As an initial matter, registration of a screenplay with the Writer's Guild does not as a matter of law establish access to a copyrighted work. *See Webb v. Stalone*, 910 F. Supp. 2d 681, 686-687 (S.D.N.Y. 2012) (finding alleged infringer did not have access to screenplay despite its registration with the Writer's Guild of America); *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 826-829 (C.D. Cal. 2010) (same); *Tomasini v. Walt Disney Co.*, 84 F. Supp. 2d 516, 521 (S.D.N.Y. 2000) (same). The simple reason for this is that registration does not place a work in the public arena – "only the registrant or listed author(s) may request access to records or information pertaining to registered

5

material." Writers Guild of Am. (West), *Frequently Asked Questions, Question 23.*[3]

Kenney's alleged publication of his *Ghostman* screenplay and movie through media interviews also fails to establish that Warner Brothers had a "reasonable opportunity" to see his work. "Access is often proved through circumstantial evidence in one of two ways: (1) a particular chain of events is established between the plaintiff's work and the defendant's access to that work or (2) the plaintiff's work has been widely disseminated." *Gable*, 727 F. Supp. 2d at 824 (internal quotations, citation, and alterations omitted). Although Kenney makes a conclusory claim of having widely disseminated his work through print and broadcast media, his Amended Complaint does not identify even a single instance of such publication.[4] Conclusory allegations will not carry a plaintiff's burden of showing a defendant's reasonable opportunity of access even under the permissive Rule 12(b)(6) standard. *See Mag Jewelry Co., Inc. v. Cherokee, Inc.*, 496 F.3d 108, 117 (1st Cir. 2007).

---

[3] Available at http://www.wgawregistry.org/webrss/regfaqs.html.

[4] In his initial Complaint, Kenney identified a single press interview with a local Stoneham, MA community newspaper. This reference is omitted from the Amended Complaint, but even so, "evidence of small circulation or local air time without other proof of access is generally not enough to demonstrate a reasonable possibility of access." *Feldman v. Twentieth Century Fox Film Corp.*, 723 F. Supp. 2d 357, 365 (D. Mass. 2010).

Insofar as Kenney relies on his website to support his claim of access, he does not allege that the site included the screenplay, full-length film, or any significant amount of material that Warner Brothers could have substantially (and successfully) plagiarized. *See Johnson*, 409 F.3d at 18 (copying must be "extensive"). *See also Feldman*, 723 F. Supp. 2d at 366 (plaintiff's allegations that television studio had obtained access to her published novels through her participation in a late-night radio show and a website that promoted her works was insufficient to show that studio had a reasonable opportunity of access to her copyrighted material). In sum, Kenney has failed to plead sufficient facts to show that Warner Brothers had anything more than a bare possibility of access (if even that) to his *Ghostman* screenplay.

**Substantial Similarity**

Although Kenney's failure to plausibly allege that Warner Brothers had a reasonable opportunity to access his work is fatal to his Amended Complaint, he has also failed to satisfy his second-prong burden of demonstrating substantial similarity (or probative similarity) between his original work and any work produced by Warner Brothers. The only allegations of substantial similarity in the Amended Complaint relate to the similar themes of the works and their "Ghostman" lead characters and titles. Indeed, because Kenney has not seen Warner Brothers' purportedly infringing screenplay or movie (there

is no indication that either yet exists), there are no sustainable allegations of plagiarism.

The substantial similarity assessment "focuses not on every aspect of the copyrighted work, but on those aspects of the plaintiff's work that are protectible under copyright laws and whether whatever copying took place appropriated those protected elements." *T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, 112 (1st Cir. 2006) (internal quotations, citation, and alterations omitted).  Copyright law, however, does not protect concepts and ideas, 17 U.S.C. § 102(b), or stock scenes and characters, *Feldman*, 723 F.Supp. 2d at 366.  *See also CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1520 (1st Cir. 1996) ("It is axiomatic that copyright law denies protection to fragmentary words and phrases" (internal quotations omitted)); 37 C.F.R. § 202.1(a) (excluding from copyright protection "[w]ords and short phrases such as names, titles, and slogans").  In short, "copyright [does]not protect plots, subplots or themes." *McGee v. Benjamin*, 2012 WL 959377, at *7 (D. Mass. Mar. 20, 2012), quoting *Franklin v. Ciroli*, 865 F. Supp. 947, 950 (D. Mass. 1994).  Thus, Kenney's allegation that both works are premised on the concept of a thief who seeks to avoid detection by spectral means does not satisfy the substantial similarity test (even assuming the existence of a Warner Brothers' work).

ORDER

For the foregoing reasons, defendants' motion to dismiss the Amended
Complaint is <u>ALLOWED</u> with prejudice.  The Clerk will enter judgment for
defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE